\*\*E-Filed 6/30/09\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VICENTE R. MESDE and JUANITA G. MESDE,<br><br>    Plaintiffs,<br><br>    v.<br><br>AMERICAN BROKERS CONDUIT, UNITED MORTGAGE & REALTY SOLUTIONS, INC., MORTGAGE ELECTRONIC REGISTRATION SOLUTIONS, INC., AMERICAN HOME MORTGAGE SERVICING, INC., CITIBANK, N.A., AHMSI DEFAULT SERVICES, INC., T.D. SERVICE COMPANY, and DOES 1-5,<br><br>    Defendants. | Case Number C 09-02418 JF (RS)<br><br>**ORDER[1] DENYING MOTION FOR PRELIMINARY INJUNCTION** |

On June 1, 2009, Plaintiffs Vicente Mesde and Juanita Mesde ("Plaintiffs") filed the instant action alleging violations of the Federal Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Equal Credit Opportunity Act ("ECOA"), and multiple California state statutes in connection with a loan application and mortgage on their residential property. On the same day, Plaintiffs filed a motion seeking a temporary restraining

---

[1] This disposition is not designated for publication in the official reports.

order and a preliminary injunction to prevent Defendants from proceeding with a foreclosure sale on their residential property. On June 5, 2009, the Court denied Plaintiffs' motion for a temporary restraining order. The Court now considers Plaintiffs' motion for a preliminary injunction.

## I. BACKGROUND

In 1986, Plaintiffs purchased the subject property located at 2511 Greenstone Court, San Jose, California 95122 (the "property") using personal funds as well as a money mortgage loan. In June or early July 2006, Plaintiffs applied for a loan from Defendant American Brokers Conduit ("ABC") for the purpose of refinancing their original mortgage.[2] On July 21, 2006, Plaintiffs signed the loan documents, which included the adjustable rate note for $540,000 with an initial yearly rate of interest of 1.000% and a deed of trust for the property. The note was secured by the property through the recorded deed of trust. ABC was named as the lender in both of these documents. Plaintiffs were provided with a document entitled "Notice of Right to Cancel."

On November 3, 2008, ABC assigned the note and deed of trust to American Home Mortgage Servicing, Inc. ("AHMSI"). On December 1, 2008, AHMSI assigned the note and deed of trust to CITIBANK, N.A. ("Citibank"). Plaintiffs made monetary payments of $2,224.46 from September 2006 through September 2008. However, in September 2008 Plaintiffs began to default in paying their monthly mortgage obligation. On December 11, 2008, Plaintiffs received a document stating that Defendant AHMSI Default Services, Inc. ("AHMSI Default") had been designated as the substitute trustee of their deed of trust. On the same day, Plaintiffs received a notice of default and election to sell under deed of trust. On March 13, 2009, Plaintiffs received a notice of trustee's sale which stated that the trustee's sale of the property had been set for April 2, 2009.

---

[2] Including the instant adjustable rate note, Plaintiffs have obtained four adjustable rate notes within the last eight years. On May 14, 2001, Plaintiffs obtained an adjustable rate loan in the amount of $300,000.00. On March 4, 2002, Plaintiffs again refinanced, obtaining an adjustable rate loan in the amount of $356,250.00. On March 17, 2004, Plaintiffs refinanced with an adjustable rate loan in the amount of $412, 250.00.

In response, Plaintiffs filed two consecutive Chapter 13 bankruptcy petitions in the United States Bankruptcy Court for the Northern District of California. The first petition was filed on March 30, 2009 and the second on May 4, 2009. As a result of the bankruptcy petitions, the trustee's sale of the property was temporarily suspended. However, the sale subsequently was rescheduled to occur on June 4, 2009.

Plaintiffs allege that in April 2009 they hired a forensic law examiner to conduct a review and audit of their loan documents and transaction. Plaintiffs allege in their complaint that the review and audit revealed that ABC had understated the financing charge for their loan by $29,949.76; that the "premium" is actually a yield spread premium ("YSP"), to which Plaintiffs never agreed; and that ABC did not provide them with an accurate truth-in-lending disclosure statement and notice of right to cancel.

## II. LEGAL STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008). A party seeking a preliminary injunction must show either "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). These "two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the possibility of success decreases." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

"Regardless of how the test for a preliminary injunction is phrased, the moving party must demonstrate irreparable harm." *American Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing grant of preliminary injunction because the movant failed to offer evidence of irreparable harm). It is not enough that the claimed harm be irreparable; it also must be imminent. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *Los Angeles Mem'l Coliseum*, 634 F.2d at 1201. "A plaintiff must do more than merely allege imminent harm . . . ; a plaintiff must *demonstrate* immediate threatened

1  injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co.*, 844 F.2d
2  at 674.  This threat must be shown by probative evidence, *Bell Atl. Bus. Sys., Inc. v. Storage
3  Tech. Corp.*, No. C-94-0235, 1994 WL 125173, at *3 (N.D. Cal. Mar. 31, 1994) (denying
4  preliminary injunction motion because movant failed to show sufficient evidence of threat of
5  irreparable harm), and conclusory affidavits are insufficient. *American Passage*, 750 F.2d at
6  1473; see also *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972).

### III. DISCUSSION

**A. Irreparable Harm**

Plaintiffs allege that they will suffer irreparable harm if the trustee's sale is allowed to proceed.  Foreclosure may constitute irreparable harm. *See, e.g., Nichols v. Deutsche Bank Nat. Trust Co.*, Civ. No. 07-2039, 2007 WL 4181111, at *3 (S.D. Cal. Nov. 7, 2007) (noting that "the imminent foreclosure of Plaintiff's residence presents a threat of irreparable harm."); *See also Sundance Land Corp. v. Comty First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir.1988) (holding that foreclosure of real property constitutes irreparable harm).  In *Parker v. U.S. Dep't of Agric.*, 879 F.2d 1362 (6th Cir. 1989), the court found that foreclosure did not constitute irreparable harm where the borrower declined to avail itself of remedies offered by the lender. However in the instant action, ABC did not offer Plaintiffs alternative means of paying off their loan.

**B. Likelihood of success on claims giving rise to a protectable right of rescission**

Although Plaintiffs can show that they will suffer irreparable harm if the trustee's sale proceeds, they also must establish a reasonable likelihood that they will succeed on the merits of their claims. *Los Angeles Mem'l Coliseum*, 634 F.2d at 1201.  For the reasons discussed below, the Court concludes that Plaintiffs cannot meet this burden.

**1. Violation of TILA and Regulation Z**

Plaintiffs claim that ABC failed to comply with the requirements of TILA and Regulation Z, thus entitling them to rescind the subject loan within an extended period of three years.  Under Regulation Z, 12 C.F.R. § 226.23(a)(3), "[i]f the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the

4

consumer's interest in the property, or upon sale of the property, whichever occurs first." Plaintiffs claim that ABC's final truth-in-lending statement included a financing charge of $1,073,287.44, but that the correct amount is $1,103,237.20, resulting in an understatement of $29,946.76.

Under 12 C.F.R. § 226.23(a)(3) n. 48, the financing charge is considered a "material disclosure," and ABC's failure to state the charge accurately would allow Plaintiffs to exercise their right to rescind. However, Plaintiffs offer no evidence to support their conclusory allegation that the review and audit of their loan transaction shows what they claim it shows. Plaintiffs do not identify the individual who allegedly performed the audit or provide the credentials of that individual. There is no declaration from Plaintiffs' "forensic law examiner" explaining the methods or calculations used. Accordingly, Plaintiffs may not rely on the audit to establish that ABC failed to make a material disclosure under 12 C.F.R. § 226.23(3).

Even assuming that Plaintiffs could provide competent evidence with respect to the review and audit, Plaintiffs do not allege that they are willing to repay the principal they borrowed. *See Pagtalunan v. Reunion Mortg. Inc.,* C 09-00162, 2009 WL 961995, at *3 (N.D. Cal. Apr. 8, 2009) (explaining that "[w]hile failure to give certain correct disclosures does extend the rescission period for up to three years . . . Plaintiffs' rescission claim fails, because Plaintiffs do not allege that they are willing to repay what they borrowed less finance charges."); *Yamamoto v. Bank of N.Y.,* 329 F.3d 1167, 1172-73 & n. 5 (9th Cir.2003). *See also* Cal. Civ. Code § 1691 (rescission is conditioned on the borrower's repayment of loan proceeds). Because Plaintiffs have not shown by competent evidence that the financing charge was understated, and because they do not allege that they are willing to repay the loan proceeds, they are unlikely to succeed on the merits of this portion of their TILA claim.

Plaintiffs also allege that the notice of right to cancel erroneously listed Defendant American Home Mortgage ("AHM") rather than ABC as the creditor.[3] In addition, they claim

---

[3] Plaintiffs point out that the notice of right to cancel listed AHM's address at 520 Broadhallow Road, Melville, NY 17747 rather than ABC's address at 538 Broadhollow Road, Melville, NY 11747. However, it is undisputed that AHM uses both addresses. Req. for Judicial

that ABC did not provide them with a copy of either a Truth in Lending Disclosure Statement ("TILDS") or an ARM disclosure within three days prior to consummation of their loan as required under TILA, 15 U.S.C. § 1639(b)(1). They contend that these alleged irregularities also extend their right of rescission pursuant to 26 C.F.R. § 226.23(a)(3).

These arguments are without merit. First, although the notice of right to cancel does list AHM rather than ABC as the creditor, the difference is immaterial because it is undisputed that ABC is a subsidiary company of AHM. Req. for Judicial Notice, Ex. 11. The notice of right to cancel properly identifies the creditor, and ABC provided Plaintiffs with a validity-executed right-to-rescind notice.[4] Nor do Plaintiffs offer sufficient evidence to establish that they did not receive either a TILDS or an ARM Disclosure. They allege merely that "to the best of [their] recollection, Defendant [ABC] did not provide them with a signed and dated copy of the Initial TILDS and ARM Disclosure . . ." Pl.'s Mem. Of P. & A. in Supp. Mot. for TRO & Prelim. Inj., p. 15. However, in July 2006, Plaintiffs signed acknowledgments stating that they had received both a TILDS and an ARM Disclosure. Decl. of Robert B. Norum in Supp. of Opp'n Mot. for Prelim. Inj., ¶ 5, Exs. B & D.

### 2. Alleged Violations of California State Statutes and The UCC

Plaintiffs allege that ABC violated several sections of the Uniform Commercial Code ("UCC") and the California Commercial Code. Specifically, they claim that in order to enforce payment through a trustee's sale, Defendants must present or exhibit the actual adjustable rate note. UCC 3-501; Cal. Com. Code 3501. However, under California law, possession of the original note is not a prerequisite to foreclosure. *See Putkkuri v. ReconTrust Co.,* 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009) (stating that "[p]ursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process. Production of the original note is not required to proceed with a non-judicial

---

Notice Exs. 10 & 12.

[4] Nothing in 12 C.F.R. § 226.23 requires the lender to put the same address on the notice of right to cancel and the deed of trust.

foreclosure."); *Candelo v. Ndex West, LLC,* 2008 WL 5382259, at *4 (E.D. Cal. Dec. 23, 2006) (noting that "[n]o requirement exists under the statutory framework to produce the original note to initiate non-judicial foreclosure."). Plaintiffs' claim that ABC has failed to show who is entitled to enforce the adjustable rate note pursuant to UCC 3-301 and Cal. Com. Code 3301 also is in error factually. The substitution of trustee document states expressly that "the undersigned present beneficiary desires to substitute a new Trustee under the Deed of Trust . . . and does hereby substitute Ahmsi Default Services, Inc., . . ." Pl.'s V. Compl. Ex. B.

Plaintiffs allege that Defendants violated sections 2932.5, 1916.7, and 1921 of the California Civil Code. However, these statutes are preempted by federal law. *See Silvas v. E*Trade Mortg. Corp.,* 514 F.3d 1001, 1004 (9th Cir. 2008) (explaining that 12 C.F.R. § 560.2(b)(9) preempts state laws dealing with "[d]isclosure[s] . . . including laws requiring specific statements, information, or other content to be included in . . . credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants."). *See also Pagtalunan v. Reunion Mortg. Inc.,* C 09-00162, 2009 WL 961995, at *4 (N.D. Cal. Apr. 8, 2009) (holding that because the Alternative Mortgage Transaction Parity Act, ("AMTPA"), 12 U.S.C. § 3803(b) preempts state laws, Plaintiffs' claims based upon Cal. Civ. Code §§ 1916.7, 1920, and 1921 were preempted, particularly because Plaintiffs failed to allege facts showing that their loan originated under state laws rather than under the AMTPA).

Finally, Plaintiffs allege that the substitution of trustee notice, notice of default and notice of trustee's sale are invalid under state law. However, Plaintiffs cite no legal authority to support these claims. Moreover, as discussed above, Plaintiffs may not rely on the contents of their alleged review and audit because they have not offered competent evidence to support it.

**C.   Balance of hardships**

Even if a plaintiff succeeds in showing some level of imminent, irreparable harm, the "extraordinary" nature of preliminary injunctive relief nonetheless requires that courts "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008) (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

1  In the instant case, Plaintiffs argue that the balance of hardships tips in their favor because
2  if they do not prevail on their claims, Defendants will not have lost anything while Plaintiffs will
3  have had the opportunity to have their claims adjudicated.  However, Defendants contend that a
4  preliminary injunction will require Citibank to continue to maintain its security interest in the
5  property by paying the property taxes and insurance.  Defendants also argue that given the present
6  housing market, the property will likely depreciate during the pendency of the action and thus
7  cause further prejudice to Citibank.

8  The Court concludes that the balance of hardships weighs in favor of Defendants.  As
9  discussed above, it is highly unlikely that the Plaintiffs will succeed on the merits of their claims.

### IV.  ORDER

11  Good cause therefor appearing, IT IS HEREBY ORDERED that Plaintiffs' motion for
12  preliminary injunction is DENIED.

14  **IT IS SO ORDERED**

16  DATED: 6/30/09

JEREMY FOGEL
United States District Judge

Case No. C 09-02418 JF (RS)
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
(JFEX2)

1   This Order has been served upon the following persons:

2   Ronald Veridiano Uy     rvu_lawoffice@yahoo.com

3   T. Robert Finlay     rfinlay@wrightlegal.net, ggrant@wrightlegal.net

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 09-02418 JF (RS)
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION
(JFEX2)